## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RUBYE L. DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 15-9160-KHV |
| UNIFIED SCHOOL DISTRICT NO. 512 | ) |
| K/A SHAWNEE MISSION SCHOOL DISTRICT, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

Rubye L. Davis brings suit against the Unified School District No. 512, known as Shawnee Mission School District (the "District").[1] Under 42 U.S.C. § 1983, plaintiff asserts that based on race, the District reassigned her teaching position from Shawnee Mission East High School ("SME") to Shawnee Mission West High School ("SMW") in violation of her rights under 42 U.S.C. § 1981 and the Equal Protection Clause of the United States Constitution. The case is set for a five-day jury trial beginning June 4, 2018. Before the Court is Shawnee Mission School District's Motion For Summary Judgment (Doc. #134) filed October 31, 2017. For reasons stated below, the Court reserves ruling on the motion and directs Magistrate Judge James P. O'Hara to revisit the stipulation reflected in the Order (Doc. #119) filed July 14, 2017.

---

[1]      Previously, plaintiff sued Jim Hinson in his individual and official capacities. See Complaint (Doc. #1) filed July 8, 2015 at 2, ¶ 4. On March 15, 2017, for reasons not apparent in the record, plaintiff agreed to dismiss with prejudice all claims against Hinson. See Stipulation Of Dismissal (Doc. #80).

On July 8, 2017, plaintiff filed an amended complaint which asserted claims against John McKinney and Ginny Lyon in their individual and official capacities. See Plaintiff's Amended Complaint (Doc. #120). On July 19, 2017, plaintiff dismissed those claims without prejudice. See Notice Of Voluntary Dismissal (Doc. #121).

The District asserts that plaintiff cannot show that it is liable under Section 1983.[2] To prove liability under Section 1983 against the District, plaintiff must show the existence of a District policy or custom which directly caused her alleged injury.  See Canton v. Harris, 489 U.S. 378, 385 (1989); Monell, 436 U.S. at 694.  A policy or custom includes (1) a formal regulation or policy statement; (2) an informal custom that amounts to widespread practice; (3) decisions of District employees with final policymaking authority; (4) ratification by final policymakers of decisions of subordinates to whom authority was delegated; and (5) deliberately indifferent failure to adequately train or supervise employees.  See Pyle v. Woods, 874 F.3d 1257, 1267 (10th Cir. 2017) (citing Brammer-Hoelter v. Twin Peaks Charter Acad., 602 F.3d 1175, 1189 (10th Cir. 2010)).

The District asserts that plaintiff cannot establish Section 1983 liability because she cannot show that a final policymaker was involved in the reassignment decision.  See Shawnee Mission School District's Memorandum In Support Of Its Motion For Summary Judgment (Doc. #138-1) filed November 14, 2017 at 15-18.  The parties apparently agree that John McKinney, principal of

---

[2]        Section 1983 provides that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983.  Section 1983 does not create substantive rights; it merely affords relief to a plaintiff who has been deprived of a constitutional or federal statutory right by a person acting under color of state law.  Gallegos v. Denver, 984 F.2d 358, 362 (10th Cir. 1993).  Section 1983 reaches only deliberate deprivations of federally protected rights; it does not impose liability for mere negligence. See Woodward v. Worland, 977 F.2d 1392, 1399 (10th Cir. 1992).  Under Section 1983, a defendant cannot be held liable for acts of its employees and agents under a theory of vicarious liability or respondeat superior.  See Monell v. Dep't of Soc. Servs. of NYC, 436 U.S. 658, 692 (1978); Sauers v. Salt Lake Cnty., 1 F.3d 1122, 1129 (10th Cir. 1993); Rubio v. Turner Unified Sch. Dist. No. 202, 453 F. Supp.2d 1295, 1301-02 (D. Kan. 2006).

SME, and/or Ginny Lyon, director of certified professionals for the District, decided to reassign plaintiff from SME to SMW.[3]  In response to defendant's motion, plaintiff does not assert that McKinney and/or Lyon acted as final policymakers for the District.  Thus, the question is whether the District is otherwise liable for the actions of McKinney and/or Lyon.  Plaintiff asserts that even if McKinney and/or Lyon were not final policymakers,[4] the District is liable because it ratified and approved the reassignment decision.  See Plaintiff's Response (Doc. #145) at 21-22.  Plaintiff also asserts that under equitable estoppel principles, the Court should preclude the District from claiming that McKinney and/or Lyon did not have final authority to make the reassignment decision.  See Plaintiff's Response (Doc. #145) at 23-25.

---

[3]     For a summary of record facts, see Appendix 1 to this Memorandum And Order.

[4]     It appears that plaintiff cannot show that McKinney and/or Lyon acted as final policymakers for the District.  As a matter of state and local law, the Court determines who exercises final policy making authority.  See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 736-38 (1989); Milligan-Hitt v. Bd. of Trustees of Sheridan Cnty., 523 F.3d 1219, 1224-25 (10th Cir. 2008).  In determining whether an official is a final policymaker, the Court considers (1) whether the official's discretionary decisions are constrained by general policies enacted by others; and (2) whether those decisions are reviewable by others.  Milligan-Hitt, 523 F.3d at 1228 (quoting Dill v. Edmond, 155 F.3d 1193, 1211 (10th Cir. 1998)).  Here, pursuant to Kansas law, the District Board of Education is the governing body of the District.  See K.S.A. § 72-1072.  District policy states that the Board "retains the power to alter or veto the acts of any or all employees when such acts are deemed contrary to the legal rights or obligations of the district, inconsistent with board policies and goals, or contrary to the best interest of the district."  Defendant Ex. 31.  Because the Board retained power to alter or veto the acts of McKinney and Lyon, neither constituted a final policymaker with respect to the reassignment decision.  See Ware v. Unified Sch. Dist. No. 492, 902 F.2d 815, 817-19 (10th Cir. 1990) (under Kansas law, board was final decision maker and did not delegate final authority to discharge employee to superintendent); Jantz v. Muci, 976 F.2d 623, 631 (10th Cir. 1992) (under Kansas law, principal did not have final authority to hire teachers); see also Lawrence v. Sch. Dist. No. 1, No. 13-1157, 560 Fed. Appx 791, 795 (10th Cir. Mar. 28, 2014) (under Colorado law, school board generally final policymaker in public school district because administrator usually constrained by board policies).

The Court has spent considerable time evaluating the parties' summary judgment filings.[5] On this record, plaintiff has not demonstrated a genuine issue of material fact regarding whether (1) the Board ratified the reassignment decision[6] or (2) the District should be equitably estopped

---

[5]    Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence. Nahno-Lopez, 625 F.3d at 1283.

The Court views the record in the light most favorable to the nonmoving party. See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative. See Liberty Lobby, 477 U.S. at 250-51. In response to a motion for summary judgment, a party cannot rely on ignorance of facts, speculation or suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988); Olympic Club v. Those Interested Underwriters at Lloyd's London, 991 F.2d 497, 503 (9th Cir. 1993). The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251-52.

[6]    On April 21, 2015, counsel for plaintiff sent District Superintendent Jim Hinson a letter requesting that the District reverse the reassignment decision. See Plaintiff Ex. 41. Plaintiff's counsel stated that plaintiff was a highly qualified African American teacher who was being reassigned for no understandable reason. In a letter dated May 1, 2015, District counsel responded that the transfer "was deemed necessary and in the best interests of the [D]istrict and its students" and that the District "denies that any other reasons exist for her transfer." Plaintiff Ex. 42. District counsel further stated: "To the extent that your letter contains innuendo that race played a part in this

(continued...)

from claiming that McKinney and/or Lyon did not have final policymaking authority.[7]

---

[6](...continued)
transfer – the District expressly denies such assertions or innuendo." Id. Standing alone, the letter does not establish a genuine fact issue regarding Board ratification. See, e.g., K.M. v. Sch. Bd. of Lee Cnty. Fla., No. 03-1258, 150 F. Appx. 953, 958-59 (11th Cir. Oct. 7, 2005). Plaintiff has not shown that the Board authorized District counsel to speak on its behalf or that any Board member even knew about plaintiff's situation. See id. Accordingly, plaintiff has not shown a genuine issue of material fact whether defendant ratified and approved the reassignment decision. See Plaintiff's Response To Defendant Shawnee Mission School District's Motion For Summary Judgment And Memorandum In Support (Doc. #145) filed December 7, 2017 at 21-22; Plaintiff Ex. 42.

[7]         Plaintiff asserts that in pretrial discovery, defendant represented that with regard to the reassignment decision, no persons or parties other than McKinney and/or Lyon had "final authority." Plaintiff's Response (Doc. #145) at 23-25. As a preliminary matter, plaintiff fails to distinguish between "final decision-making authority" and "final policy-making authority." The fact that McKinney and/or Lyon may have had "final authority" over the decision to reassign plaintiff does not show that they had "final policymaking authority." In other words, whether the Board may have delegated decision-making authority is not dispositive. The relevant question is whether the Board delegated its legal power regarding final policymaking. See, e.g., Milligan-Hitt, 523 F.3d at 1227. If the Board retained authority to review the reassignment decision – even if it did not exercise such authority or investigate the basis of the decision – it did not delegate final policymaking authority. See id. at 1229 (citing Jantz, 976 F.2d at 631).

Here, the record suggests that the Board retained authority to review the decision and did not delegate final policymaking authority. Moreover, plaintiff has not shown that defendant misrepresented that McKinney and/or Lyon had final policymaking authority or that plaintiff could have reasonably relied on any such representation. Early in the case, defendant asserted that the Board retained policymaking authority over the reassignment decision. See Answer (Doc. #4) filed September 2, 2015 at 8, ¶ 21 (Board retains responsibility for making policies regarding personnel decisions). Plaintiff asserts that at initial disclosures, defendant "did not specifically identify any person on behalf of the District who could testify as to the authority of the [Board] with regard to teacher reassignments." Plaintiff's Response (Doc. #145) at 23-24. In its disclosures, defendant identified Dr. Doug Sumner as an individual likely to have discoverable information regarding District reassignment policies and procedures. See Plaintiff Ex. 43 at 2. Plaintiff chose not to depose Sumner. See Defendant's Reply (Doc. #150) at 42.

Plaintiff asserts that in initial disclosures, defendant did not identify or produce District policy which states that the Board retains power to alter or veto the acts of any employees, i.e. SMSD Policy BBA, Defendant Ex. 31. See Plaintiff's Response (Doc. #145) at 24. It its disclosures, defendant identified eight categories of documents including "[t]he District's Board of Education policies." See Plaintiff Ex. 43 at 2. Defendant sent plaintiff a link to the policies, and the policies are available on its website. See Defendant's Reply (Doc. #150) at 42.

(continued...)

To the extent that McKinney and/or Lyon are not final policymakers and the Board did not ratify the reassignment decision, the District is not liable under Section 1983. Thus, any complaint about discriminatory conduct by McKinney and/or Lyon belongs in a suit against them personally. See Milligan-Hitt, 523 F.3d at 1229.

On June 2, 2017, Magistrate Judge K. Gary Sebelius entered an order which sustained plaintiff's motion to amend the complaint to include claims against McKinney and Lyon.[8]

---

[7](...continued)
S M S D   P o l i c y   B B A   i s   a v a i l a b l e   o n   t h e   w e b s i t e .   S e e https://www.boarddocs.com/ks/smsd/Board.nsf/public (last visited February 27, 2018).

Plaintiff asserts that in interrogatory responses, defendant did not identify the Board as an entity "who performed any act, role or participated in any manner with respect to the transfer" of plaintiff from SME to SMW. Plaintiff Ex. 44 at 3-4; Plaintiff's Response (Doc. #145) at 24. Not naming the Board as an entity that participated in the reassignment does not misrepresent the fact that the Board retained final policymaking authority over the decision.

Plaintiff cites deposition testimony that Lyon had "final and ultimate authority" regarding teacher reassignments. See Plaintiff's Response (Doc. #145) at 23-24. The testimony upon which plaintiff relies addresses who has power to authorize and approve reassignment decisions; it does not address who retains final policymaking authority over such decisions. See Hinson Depo. at 108:17 to 109:3. As discussed, the fact that the Board may have delegated decision-making authority does not show that it delegated its final policymaking authority.

[8]    In granting plaintiff leave to file an amended complaint, the magistrate judge stated as follows:

The court is concerned by plaintiff's delay in asserting the claims against McKinney and Lyon[]. There is little question that plaintiff could have acted in a quicker fashion. The involvement of McKinney and Lyon[] in the decision to transfer was known, or should have been known, by plaintiff well in advance of the Pretrial Conference. However, given the nature of the claims in this case, the court fails to find that the delay was undue. Plaintiff's claims against the school district have not changed. The only aspect of her claims that has changed concerns the individuals responsible for the transfer decision. The court agrees with plaintiff that some of the early discovery provided by USD 512 failed to directly indicate who made the decisions to transfer plaintiff. In any event, the court is persuaded that plaintiff's

(continued...)

Thereafter, on July 8, 2017, plaintiff filed an Amended Complaint (Doc. #120) which asserted claims against them in their individual and official capacities. See id. ¶¶ 5-6. Specifically, plaintiff asserted claims against McKinney and Lyon in their official capacities and alternatively – in the event they were "deemed not to have the final authority for the District" to reassign plaintiff – in their individual capacities. Id.

For reasons not apparent in the record, at a status conference before Judge Sebelius on July 14, 2017, plaintiff agreed to dismiss the individual capacity claims against McKinney and Lyon After the conference, Judge Sebelius entered an order which noted that the District opposed the addition of two new parties in the case.[9] See Order (Doc. #119) filed July 14, 2017 at 1. In the order, he noted the District's position that in granting plaintiff leave to amend, the Court "had not allowed plaintiff to add two individuals as defendants being sued in their individual capacities." Id. Judge Sebelius then stated as follows:

> After some discussion, the parties agreed to a stipulation concerning [McKinney and Lyon]. Plaintiff agreed to dismiss the individual defendants if the [District] agreed that the individual defendants had acted in their official capacities and within the scope of their authority in transferring plaintiff from her employment at [SME] to [SMW]. The [District] agreed to plaintiff's request.

Id. The magistrate ordered that "[i]n light of the stipulation reached by the parties," plaintiff shall file a motion to dismiss the individual defendants. Id. at 2. On July 19, 2017, plaintiff dismissed without prejudice all claims against McKinney and Lyon. See Notice Of Voluntary Dismissal

---

[8](...continued)
motion should be granted to facilitate a decision on the merits.

Order (Doc. #107) at 6.

[9]    The docket does not reflect that defendant filed a motion or objection regarding the amended complaint.

(Doc. #121).

The Court is confused and disturbed by the purported stipulation. It appears to serve no purpose or benefit to plaintiff and in fact contravenes plaintiff's best interests in the case. As noted, a key issue is whether the District is liable for the conduct of McKinney and Lyon. The parties dispute whether they acted as final policymakers and/or whether the Board ratified the reassignment decision. If the District is not liable for their conduct, it is obviously in plaintiff's best interest to assert individual claims against McKinney and Lyon to hold them personally liable for the reassignment decision. According to Judge Sebelius, plaintiff agreed to dismiss the individual claims so long as the District agreed that in reassigning plaintiff, McKinney and Lyon acted in their official capacities and within the scope of their authority. This purported stipulation is irrelevant to the issues at hand. The record reflects no dispute regarding whether McKinney and Lyon acted in their official capacities and within the scope of their authority. Moreover, because the District was already a defendant in the case, plaintiff did not need to add official capacity claims against McKinney and Lyon. See, e.g., Lopez v. LeMaster, 172 F.3d 756, 762 (10th Cir. 1999) (Section 1983 claim against municipal employee in official capacity equivalent of suit against municipality). Because Judge Sebelius was apparently involved in brokering this confusing result, the Court directs Judge O'Hara[10] to revisit the stipulation reflected in the order of July 14, 2017 (Doc. #118) and determine whether the stipulation should be recalled and plaintiff's claims against McKinney and Lyon individually reinstated in this case.[11]

---

[10]    To expedite this matter, in light of the upcoming trial setting, the Court refers it to Judge O'Hara rather than Judge Sebelius.

[11]    The Court notes that defendant asserts that plaintiff cannot establish a prima facie
(continued...)

[11](...continued)

case of race discrimination or pretext. See Defendant's Memorandum (Doc. #138-1) at 18-25. The Court has thoroughly reviewed the summary judgment record and finds that plaintiff has established genuine issues of material fact in this regard. The Court applies the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See English v. Colo. Dept. of Corrections, 248 F.3d 1002, 1007 (10th Cir. 2001). Under this framework, plaintiff bears the initial burden of establishing a prima facie case, i.e. that (1) she belongs to a protected class; (2) she suffered adverse employment action; and (3) the adverse employment action occurred under circumstances which give rise to an inference of discrimination. See McDonnell Douglas, 411 U.S. at 802; Hysten v. Burlington N. & Santa Fe Ry. Co., 296 F.3d 1177, 1181 (10th Cir. 2002). The burden then shifts to defendant to provide a legitimate, nondiscriminatory reason for its action. McDonnell Douglas, 411 U.S. at 802. If defendant successfully does so, the burden shifts back to plaintiff to show that defendant's stated reason is a pretext for discriminatory intent. Id. at 804.

Defendant asserts that plaintiff cannot show that her reassignment constituted adverse employment action. See Defendant's Memorandum (Doc. #138-1) at 18-20. The Tenth Circuit liberally defines the phrase "adverse employment action." Jones v. Okla. City Pub. Sch., 617 F.3d 1273, 1279 (10th Cir. 2010) (quoting Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532 (10th Cir. 1998)). Such actions are not limited to monetary losses in the form of wages or benefits. Sanchez, 164 F.3d at 532. Instead, the Court takes a case-by-case approach and examines the unique factors relevant to the circumstances at hand. Id. An employment action is adverse if it constitutes a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Hillig v. Rumsfeld, 381 F.3d 1028, 1032-33 (10th Cir. 2004) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). A mere inconvenience or alteration of job responsibilities does not constitute adverse action. Sanchez, 164 F.3d at 532.

Here, plaintiff presents evidence that SMW students were more disruptive and had more behavioral issues than SME students and that at SMW, plaintiff was assigned to teach introductory freshman biology, which was less academically advanced and less prestigious than human anatomy/physiology. Construed in the light most favorable to plaintiff, the record presents a genuine fact issue whether the reassignment constituted adverse employment action. See, e.g., Stinnett v. Safeway, Inc., 337 F.3d 1213, 1217 (10th Cir. 2003) (fact issue whether job reassignment requiring reduced responsibility and lesser degree of skill constituted adverse action); Drape v. UPS, Inc., No. 12-2172-KHV, 2013 WL 6804214, at *10 (D. Kan. Dec. 23, 2013) (fact issue whether transfer in job assignment constituted adverse action); Walker v. Bd. of Cnty. Comm'rs of Sedgwick Cnty., No. 09-1316-MLB, 2012 WL 1190820, at *13 (D. Kan. April 10, 2012) (fact issue whether therapist's building transfer constituted adverse action); Ratts v. Bd. of Cnty. Comm'rs, 141 F. Supp.2d 1289, 1308 (D. Kan. 2001) (transfer of city employee radically altered duties even though salary remained same); cf. Wells v. Colo. Dept. of Transp., 325 F.3d 1205, 1214 (10th Cir. 2003) (no adverse action where work on new project was similar to old work and sometimes more

(continued...)

_____

[11](...continued)

sophisticated); <u>Sanchez</u>, 164 F.3d at 532 (teacher reassignment from fourth grade to second grade at another school purely lateral where commute increased but salary and benefits remained same; no special circumstances showed anything beyond mere inconvenience or alteration of job responsibilities).

Defendant asserts that plaintiff cannot show that the District treated her differently than similarly situated employees.  <u>Defendant's Memorandum</u> (Doc. #138-1) at 21-22.  Comparing plaintiff's treatment to that of similarly situated employees is only one way in which plaintiff can show circumstances which give rise to an inference of discrimination.  <u>See Sorbo v. UPS</u>, 432 F.3d 1169, 1173 (10th Cir. 2005); <u>Hysten</u>, 296 F.3d at 1181-82.  The burden of establishing a prima facie case is not onerous.  <u>See Orr v. Albuquerque</u>, 417 F.3d 1144, 1149 (10th Cir. 2005).  Because the same evidence which establishes a prima facie case also raises an inference of pretext, the Court addresses the evidence below.  <u>See Sorbo</u>, 432 F.3d at 1173-74; <u>Ewing v. UPS</u>, No. 16-cv-2642-JWL, 2018 WL 572042, at *3 (D. Kan. Jan. 26, 2018).

Defendant asserts that it reassigned plaintiff to SMW "in furtherance of a District-wide push to assign teachers to the building where they did and/or could take on supplemental pay/extra duty contracts to serve as a coach/sponsor."  <u>Defendant's Memorandum</u> (Doc. #138-1) at 23.  Defendant asserts that this goal was important to build relationships and rapport between students and teachers and also for purposes of student supervision.  <u>See id.</u>  Plaintiff may show that defendant's reasons are a pretext for discrimination by producing evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  <u>Jones v. Okla. City Pub. Sch.</u>, 617 F.3d 1273, 1280 (10th Cir. 2010) (further citations omitted).  While this burden is not onerous, it is also not empty or perfunctory. <u>Morgan v. Hilti, Inc.</u>, 108 F.3d 1319, 1323-24 (10th Cir. 1997).  A plaintiff typically shows pretext with evidence that (1) defendant's stated reason is false, <u>i.e.</u> unworthy of belief; (2) defendant acted contrary to its written policy prescribing the action to be taken under the circumstances; or (3) defendant acted contrary to an unwritten policy or practice.  <u>See Kendrick v. Penske Transp. Servs., Inc.</u>, 220 F.3d 1220, 1230 (10th Cir. 2000).

Construed in the light most favorable to plaintiff, the record supports an inference that defendant's stated reasons for the reassignment are pretextual.  According to District administrative guidelines, Board policy is to rely on attrition, <u>i.e.</u> retirement, resignations and leaves of absences, before transfers are issued.  <u>See</u> Plaintiff Ex. 35.  Since 1992, SME teacher Linda Sieck observed that SME only reassigned teachers when it had an excess of teachers in a certain department.  At the time of plaintiff's reassignment, SME did not have an excess of teachers in the biology department. McKinney and Lyon testified that for the 2015-16 school year, the District pushed to get coaches and teachers who would take on extra duties into the building in which they were involved in extra activities.  <u>See</u> Defendant Ex. 2, Lyon Depo. at 64:25 to 65:4; Defendant Ex. 3, McKinney Depo.

(continued...)

-10-

**IT IS THEREFORE ORDERED** that Magistrate Judge James P. O'Hara revisit the stipulation reflected in <u>Order</u> (Doc. #119) filed July 14, 2017 and determine whether the stipulation should be recalled and plaintiff's claims against McKinney and Lyon individually reinstated in this case.

**IT IS FURTHER ORDERED** that Magistrate Judge James P. O'Hara discuss mediation with the parties and if appropriate, order them to mediate plaintiff's claims.

Dated this 5th day of April, 2018 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[11](...continued)
at 91:12-18. Defendant points to no written policy in this regard. Moreover, defendant does not assert that such policy required or permitted SME to transfer an existing teacher out of the building. McKinney testified that he reassigned plaintiff based on his desire to "have teachers in the building who were working with students beyond the classroom." Plaintiff Ex. 34, McKinney Depo. at 52:1-2. McKinney did not consider that plaintiff spent the most hours working with biology students before and after school or that she was a sponsor of the Brain Bee. Moreover, although Heidi Delaney filled a coaching position at SME, defendant has not shown that SME could not fill the position from within its current staff. SME administration customarily sent an email announcement for openings regarding a coaching position or sponsor of a student extracurricular activity; it did not send such an email regarding the assistant girls basketball coach position which Heidi Delaney filled. Based on the foregoing evidence, a reasonable jury could conclude that defendant's stated reasons for the reassignment are not only unworthy of belief but a pretext for discrimination.

**Appendix 1**

The following facts are uncontroverted, deemed admitted or construed in the light most favorable to plaintiff.[12]

A.    The District

The District is a public school district in Johnson County, Kansas. Its Board of Education serves as governing body of the District. Board policy states that it "may delegate administrative policy to the superintendent or other employees as specified, but retains the power to alter or veto the acts of any or all employees when such acts are deemed contrary to the legal rights or obligations of the district, inconsistent with board policies or goals, or contrary to the best interest of the district." Defendant Ex. 31.

At times relevant to plaintiff's claims, Dr. Jim Hinson served as superintendent of the District. As Superintendent, Hinson was the executive officer and chief administrative officer for the District. As such, he was vested with charge and control of schools within the District, subject to the Board's policies, orders, rules and regulations.

At times relevant to plaintiff's claims, Ginny Lyon served as director of certified professional staff for the District. As director of certified professional staff, Lyon was vested with authority to approve and authorize reassignment of teachers from particular buildings. Hinson Depo. at 17:17 to 18:11, Plaintiff Ex. 7. Regarding teacher assignments, Lyon exercised final authority – her decisions did not require review or approval by her superiors. Id. at 19:23 to 20:7. As a practical matter, Lyon would defer to a school principal's decision to reassign a teacher so long as it was in accordance with District administrative guidelines. Lyon Depo. at 12:15 to 14:15.

District administrative guidelines regarding transfer and reassignment of secondary teachers provide, in part, as follows:

It has been the policy of the Board of Education to rely upon attrition, i.e. retirement, resignations, and leaves of absences before transfers are issued. Transfers will be made only when necessary and in the best interest of the school system. The Board of Education has charged administration with the responsibility of staffing all of the programs of the district. The programs of the district include the curricular, co-curricular, and extra-curricular offerings.

I.    When a transfer is necessary, the following factors will be considered:
- Instructional requirements of the building.
- Length of service in [the District].  ***

---

[12]    The Court includes only those facts which are material to defendant's motion and disregards any facts which are not supported by record citations.

-12-

- Teacher's area of expertise.
- Licensures, major areas of study, additional credit hours, and advanced degrees.
- Present in-building assignments:
  - (1) Department chairperson/division coordinator.
  - (2) Head coaching duties.
  - (3) Sponsor of co-curricular activities.
  - (4) Assistant coach in one sport.
  - (5) Leadership on building committees[.] ***
  - (6) Training that has been conducted to fill specific building roles such as teaching IB or being IB coordinator[.] ***

Plaintiff Ex. 35.

SMW has a reputation of having more minority students than SME. Muhammad Depo. at 27:19-25, Plaintiff Ex. 15. For the 2015-16 school year, SME enrollment was 87 per cent white, and 13 per cent black, Hispanic and other minority students. For the same school year, SMW was 56 per cent white and 44 per cent black, Hispanic and other minority students comprised the remaining 44 per cent. Students refer to SMW and another District school, Shawnee Mission North ("SMN"), as "ghetto" schools. Id. at 28:1-3. This is primarily based on lower-income apartment housing that is close to those schools, students coming in from neighboring cities, single-parent households and a higher ratio of low socioeconomic students and families. Id. at 28:4-12. SNW and SMN students have reputations of being more disruptive and having more behavior issues than students in other schools in the District. Id. at 28:13-16.

B.    Plaintiff

Plaintiff is an African American woman. In 1999, she graduated from Middle Tennessee State University ("MTSU") with a Bachelor of Science degree in biology with concentration in microbiology, and a minor in chemistry. With a grade point average of 3.74 on a four-point scale, she graduated cum laude. Plaintiff graduated in the top five per cent of her class and was a member of Phi Kappa Phi Society.

In 2006, plaintiff received a Master of Arts degree in Teaching from Central Missouri State University, where she graduated with a 4.0 GPA.

In June of 2006, the Kansas Board of Education granted plaintiff a license to teach biology in grades 6 to 12 and science in grades 5 to 8.

From June of 2007 to August of 2015, the District employed plaintiff as a science teacher. Under her employment contract, plaintiff was required to accept any assignment for which she was qualified.

Until the spring of 2015, the District assigned plaintiff to teach biology I and human

anatomy/physiology at SME.  Plaintiff was the only human anatomy/physiology teacher at SME.[13] Plaintiff's anatomy/physiology class was regarded as a preparatory class for students pursuing college education and careers in human health sciences.  A number of plaintiff's students credited learning experiences in her class with their ability to comprehend and master human anatomy/physiology classes and other health science classes in college.

As a teacher, plaintiff was beloved.  Her fellow teachers, students and parents held her in high regard.  During her tenure at SME, plaintiff spent hours before and after school tutoring and counseling students.  Plaintiff spent substantially more time with her students before and after school than any other teacher in the biology department at SME.

At SME, plaintiff was a sponsor for the "Brain Bee," i.e. a regional, state and national contest where students compete in answering questions about the brain and human nervous system.  The Brain Bee is also a forum where students can network with science and health care professionals to secure internships and employment in the health science field while in high school and college.

Also at SME, plaintiff organized and sponsored a "Shadow" program in which her students shadowed health care professionals at work for class credit.

On several occasions during plaintiff's tenure at SME, administration sent teachers emails about opportunities to obtain supplemental pay/extra-duty contracts.  Despite receiving these emails, plaintiff did not have a supplemental pay/extra-duty contract to serve as a coach/sponsor at SME.

Before the spring of 2015 (1) neither SME administration nor the District provided any written communication about any District policy to assign teachers to a school where they were coaches or sponsors of co-curricular activities; (2) no one informed plaintiff of a District policy to assign teachers to the school where they were a coach or sponsor of a co-curricular activity; and (3) none of the announcements for coaches or sponsors for co-curricular student activities stated that in the event of a teacher reassignment, whether a teacher served as a coach or sponsor would be a factor considered for allowing the teacher to remain at the school.[14]

C.    Events Surrounding Plaintiff's Reassignment From SME To SMW

In 2013, John McKinney, principal of SME, hired Dustin Delaney, a white man, to serve as

---

[13]    To effectively teach human anatomy/physiology, a teacher must know not only anatomy and physiology, but also chemistry, biochemistry, microbiology and organic chemistry. As part of the human anatomy/physiology class, plaintiff instructed students in the dissection and examination of organs and internal parts of animal cadavers.

[14]    After the spring of 2015, SME teachers received announcements which stated that in the event a teacher reassignment, whether a teacher was a coach or sponsor would be a factor in deciding whether to keep the teacher at SME.

head coach for the SME varsity football team. At the job interview, Dustin Delaney was accompanied by his wife, Heidi Delaney, a white woman and high school biology teacher at SMW. During the interview, the Delaneys said that they wanted Heidi Delaney to be assigned to SME along with Dustin Delaney. According to Heidi Delaney, McKinney told them that she would transfer to SME when a position became available. Plaintiff Ex. 17, Heidi Delaney Depo. at 26:15 to 27:4, 28:6-14.[15]

In the fall of 2014, the SME football team won the state championship.

After winning the state championship, in early 2015, Dustin Delaney met with Hinson and requested, among other things, that his wife be reassigned to SME. Plaintiff Ex. 18, Hinson Depo. at 8:2-22. Hinson referred Dustin Delaney's requests to the District athletic director.[16] Id. at 12:19 to 13:16. In so doing, Hinson told the athletic director, "Here are the lists of concerns from [Dustin] Delaney, you're responsible for supervising the Ads. This is your issue."[17] Id. at 13:21-25. Hinson testified that he did not hear back from the District athletic director regarding Dustin Delaney's concerns. Id. at 14:1-9. Hinson stated, "I don't ask for a report back from those individuals. I just give them charge." Id. at 14:8-9.[18]

In the 2015 spring semester, McKinney informed Heidi Delaney that she would be

---

[15]     McKinney testified that he never had any discussions with Dustin Delaney regarding Heidi Delaney transferring to SME. Plaintiff Ex. 16, McKinney Depo. at 11:24 to 12:4. McKinney said that during the job interview, Dustin Delaney stated that he would prefer his wife to work at SME, "but that was the extent of the conversation about it." Id. at 12:4-9. McKinney testified that after the initial interview, he never again discussed the issue with Dustin Delaney. Plaintiff Ex. 16, McKinney Depo. at 12:10-17.

[16]     The record does not disclose the identity of the District athletic director.

[17]     The record does not indicate what "Ads" stands for.

[18]     In response to an interrogatory asking whether Hinson had any discussions with anyone regarding the reassignment of Heidi Delaney from SMW to SME for the school year 2015-16, defendant responded as follows: "Hinson was not personally involved in the decision to reassign [Heidi] Delaney to SME, therefore he does not remember any conversation or discussion with anyone regarding the reassignment prior to litigation." Plaintiff Ex. 19.

Defendant contends that Hinson did not direct and was not involved in reassigning Heidi Delaney to SME. See Shawnee Mission School District's Memorandum In Support Of Its Motion For Summary Judgment (Doc. #138-1) filed November 14, 2017 at 2, ¶ 4. Hinson testified that he first learned that Heidi Delaney had been reassigned to SME when this lawsuit was filed. Plaintiff Ex. 18, Hinson Depo. at 11:22 to 12:6, 16:14-19. McKinney testified that prior to Heidi Delaney's arrival at SME, he did not discuss the matter of her transfer with Hinson. Plaintiff Ex. 16, McKinney Depo. at 12:17.

transferred to SME for the 2015-16 school year.  Plaintiff Ex. 17, Heidi Delaney Depo. at 29:8-14.

Steve Loe, principal of SMW, had no involvement in the reassignment of Heidi Delaney.  Plaintiff Ex. 36, Loe Depo. at 38:9-12.  Someone from human resources called and told Loe that Heidi Delaney was being reassigned to SME.[19]  Id. at 38:17 to 39:7, 40:2-7.  On February 23, 2015, Loe sent Lyon an email regarding staff changes at SMW.  In the email, Loe asked, "Is Heidi Delaney (biology) going to [SME] for sure?  If so, do we have a say in who comes to us?"  Plaintiff Ex. 38.  Ultimately, Loe did not have any input in the decision of who replaced Heidi Delaney at SMW.  Defendant Ex. 19, Loe Depo. at 48:3-7.

At McKinney's request, Lyon reassigned Heidi Delaney from SMW to SME for the 2015-16 school year.  McKinney told Lyon that SME had a coaching need.  At the time, Heidi Delaney had committed to and ultimately signed a supplemental/extra duty contract to coach girls basketball at SME for the 2015-16 school year.[20]  When Heidi Delaney was reassigned to SME, she filled the teaching position held by plaintiff.  Heidi Delaney had the same teaching certification as plaintiff.

In the spring semester of 2015, McKinney placed plaintiff on reassignment from SME for the 2015-16 school year.  Defendant Ex. 2, Lyon Depo. at 12:3-14.  McKinney testified that in deciding to reassign plaintiff, he followed District administrative guidelines.  Defendant Ex. 3, McKinney Depo. at 106:13-19.  Lyon testified that even though SME administration decided who to reassign, she checked to make sure that the decision was based on District guidelines.[21]  Id. at 48:15 to 49:2.

At the time of plaintiff's reassignment, SME did not have an excess of teachers in the science department.  McKinney testified that he included plaintiff in the staffing reassignment based on his desire to "have teachers in the building who were working with students beyond the classroom."[22]

_____

[19]   In an informal conversation during a meeting, McKinney told Loe that there might be a reassignment in science that involved SME and SMW.  Id. at 41:25 to 42:14.  McKinney did not say what teachers would be involved in the reassignment.  Id. at 42:14-16.  Loe could not remember if McKinney spoke to him before or after he received the call from human resources.  Loe Depo. at 42:3-5.  Based on context, it appears that the conversation with McKinney occurred before the telephone call.

[20]   SME administration customarily sent an email announcement for openings regarding a coaching position or sponsor of a student extracurricular activity.  Plaintiff did not receive such an email regarding the assistant girls basketball coach position which Heidi Delaney filled.

[21]   Lyon testified that "the principal will make a determination based on a cut in staffing what staff member needs to be placed on reassignment."  Id. at 12:18-20.

[22]   McKinney testified that the District had a goal to put teachers in the classrooms who were also willing to work with students beyond the classroom.  Plaintiff Ex. 33, McKinney Depo.
(continued...)

Plaintiff Ex. 33, McKinney Depo. at 52:1-2.  McKinney was not aware that plaintiff spent hours working with students before and after school or that she was involved in the Brain Bee.  Id. at 110:8-22, 111:9-22, 111:23 to 112:1, 112:11-22.

On March 3, 2015, McKinney and Jeremy Higgins, Vice-Principal at SME, met with plaintiff and informed her that administration was reassigning her from SME.  At the meeting, McKinney cited the following reasons for the reassignment:  the superintendent was streamlining to make things more efficient in the District, and teachers were going to be teaching six classes; the District wanted teachers who not only teach, but also serve multiple roles such as athletic coach or sponsor; SME had someone coming in who teaches biology and coached several sports; and the decision had nothing to do with reduction in force or seniority.  Affidavit Of Rubye L. Davis ¶ 17, Plaintiff Ex. 1; Defendant Ex. 13, Davis Depo. at 11:5-16.

Following the meeting, plaintiff did not participate in the reassignment process.  When plaintiff learned that SME was reassigning her, she became deeply distraught and physically ill.  As a result, she did not attend a reassignment meeting which Lyon scheduled.  Plaintiff did not complete the District Certified Personnel Reassignment Form, i.e. a form which asks for a teacher's preferences upon reassignment.  See Defendant Ex. 22.  Neither Lyon nor anyone else provided her the form or asked that she complete it.[23]  Plaintiff Ex. 1, Davis Affidavit ¶ 19.

_____

[22](...continued)
at 92:15-17.  McKinney stated that having a teacher in the classroom who is also part of students' lives outside the classroom creates a culture of shared responsibility and makes everyone feel valued and respected.  Id. at 92:11-14.

McKinney and Lyon testified that for the 2015-16 school year, the District pushed to get coaches and teachers who would take on extra duties into the building in which they were involved in the extra activities.  See Defendant Ex. 2, Lyon Depo. at 64:25 to 65:4; Defendant Ex. 3, McKinney Depo. at 91:12-18.  Having teachers in the building who take on extra duties and coaching positions helps build rapport and beneficial relationships with students and also allows for better supervision of the students.  Defendant Ex. 4, Hinson Depo. at 34:25 to 35:21.

Based on coaching needs for the 2015-16 school year, the District placed another teacher, Linn Hibbs, on reassignment twice.  Defendant Ex. 2, Lyon Depo. at 62:9 to 64:24.  Hibbs, a white man, was the head football coach at Shawnee Mission Northwest ("SMNW").  Id. at 62:14, 64:22-24.  Hibbs was not going to coach the following year, and SMNW decided that it needed his position to hire a new football coach.  Id. at 62:14 to 63:5.  Lyon initially placed Hibbs at SMW but then moved him to a middle school after SMW learned that he was not interested in coaching.  Id. at 63:7 to 64:3.

[23]    Lyon testified that had plaintiff completed the form, Lyon would have considered her making her reassignment.  Lyon Depo. at 54:2-6, Defendant Ex. 2.

During the 2014-15 school year, the following teachers taught life sciences at SME: James Lockard, Kristen Zuck, Russell Debey, Jennifer Davis, Kim VanNice and plaintiff. At the time, plaintiff was the least senior life science teacher at SME who was not also department chairperson/division coordinator, coach/sponsor under an extra duty contract, leader on a building committee and/or certified/trained in IB/AP. In fact, plaintiff was the only life science teacher at SME who did not fall into at least one of these categories.[24]

On March 13, 2015, Lyon met with plaintiff. At the meeting, Lyon and plaintiff discussed that although Davis and VanNice were less senior than plaintiff, Davis sponsored the pep club and VanNice had IB/AP certification/training. The same day, plaintiff sent Lyon an email and copied McKinney, Hinson and others. The email is lengthy – roughly two pages, single-spaced. It states, in part, as follows:

> I am following up with your after our meeting this afternoon . . . . I expressed concern that I was being reassigned and that there were other members of my biology department that were of lower seniority than myself. You said that you did not agree with [McKinney] on the part when he said that the decision was not based on seniority because it was. You said that in determining seniority one looks at the number of years in the district and that the seniority list is reflected in the RIF list. You also said that if you coach, sponsor, or the district has invested money in you (for training) this increases seniority. * * *
>
> I was also told (by reliable sources) earlier in the school year that the SME's football coach's wife was coming to [teach] biology at SME. I was told this after our football team won state. I told you that when the biology teachers were told this we were surprised because we didn't know what that had meant for our job security. * * *
> I also asked you at the end of the meeting why I was being reassigned if there is no need for another biology teacher at our school and there is no coach needed at the present time. You told me you "understand that they have a plan for using that person (who is being transferred) in a coaching role." * * *
>
> In our followup telephone call after our meeting you reiterated that [the District] does not have a transfer policy like most schools, but they do have guidelines that you

---

[24]      Lockard was more senior than plaintiff, had a supplemental pay/extra duty contract to serve as a coach/sponsor at SME, was a leader on a building committee and had a Master's degree. Zuck was more senior than plaintiff, a leader on a building committee, certified/trained in International Baccalaureate and had a Master's degree. Debey was more senior than plaintiff and had two supplemental pay/extra duty contracts to serve as a coach/sponsor at SME and a Master's degree. Davis was less senior than plaintiff but had a supplemental pay/extra duty contract to serve as a coach/sponsor at SME and obtained a Master's degree. VanNice was less senior than plaintiff but was certified/trained in International Baccalaureate/Advanced Placement ("IB/AP") and had a Master's Degree.

follow for transfers.  At this time I told you that reliable sources told me about a conversation between [Hinson] and the football coach following the SME football state title, in which [Hinson] asked the football coach what do we need to do to keep you here and the football coach stated that he wanted his wife at SME.

Plaintiff Ex. 20.

Lyon testified that she determined to transfer plaintiff to SMW for the 2015-16 school year.[25] Lyon stated that when a principal completed a reassignment form, it was her responsibility to determine where the teacher would be reassigned.  Plaintiff Ex. 36, Lyon Depo. at 15:19-22.  Lyon testified that when she received McKinney's request to reassign plaintiff, she determined to reassign her to SMW.  Id. at 15:1 to 16:7.  Because Heidi Delaney was being reassigned to SME, Lyon knew that she had an open position at SMW for which plaintiff was certified.  Id. at 16:8-20.  Lyon testified that she was involved with reassigning Heidi Delaney from SMW to SME because it was on SMW's reassignment list, i.e. because Loe submitted a reassignment request for Heidi Delaney.[26] Id. at 16:21 to 17:21.  Lyon testified that no one told her to reassign plaintiff to SMW.  Id. at 46:7-10.  Lyon's decision to reassign plaintiff from SME to SMW did not require approval by any other official of the District.[27]  Plaintiff Ex. 45, Lyon Depo. at 24:8-12.

Upon reassignment to SMW, plaintiff was assigned to teach basic biology I and introductory freshman biology – not the academically advanced and college prep course of human anatomy/physiology that she had taught at SME.  As a result of the change, plaintiff's credentials and stature would be diminished.  Also, plaintiff could no longer be involved with the Brain Bee program which she sponsored at SME.[28]  In plaintiff's view, the reassignment was tantamount to reassigning a calculus teacher to teach basic math.

At the time of plaintiff's reassignment, Zuck taught 50 per cent biology and 50 per cent psychology at SME.  Zuck assumed another position in the District, leaving her teaching positions

---

[25]    Upon reassignment to SMW, plaintiff received the same pay and benefits.

[26]    Lyon's testimony is difficult to reconcile with Loe's testimony.  As discussed, Loe testified that he had no involvement in the reassignment of Heidi Delaney.  Plaintiff Ex. 36, Loe Depo. at 38:9-12.  Loe said that someone from human resources called and told him that Heidi Delaney was being reassigned to SME.  Id. at 38:17 to 39:7, 40:2-7.

[27]    Following her reassignment to SMW, plaintiff did not request to be assigned to a different building in the District.

[28]    The record does not reflect why plaintiff could not sponsor the Brain Bee program at SMW.

-19-

at SME vacant.  The District posted the open positions at SME, but plaintiff did not apply.[29]  The District hired Jacob Kuppersmith to fill the 50 per cent biology position and assigned him to teach physiology classes in the biology department.  Kuppersmith applied for the job in March of 2015.  At that time, he was enrolled in a Master's degree program at Rockhurst University and planned to obtain a teaching license in the field of biology.  See Plaintiff Exhibit 29, Kuppersmith Application.  Kuppersmith obtained the same teaching certification as plaintiff.  For the 2015-16 school year, Kuppersmith had two supplemental pay/extra duty contracts at SME.

Linda Sieck has worked at SME since 1992.  From 1992 to 2015, Sieck never observed an equal transfer or swap of a teacher from SME for a teacher from another school.  In Sieck's observations, SME had only reassigned teachers when it had an excess of teachers in a certain department, i.e. more teachers than it needed based on student enrollment.

Janet Carter, an African American woman, worked as a Spanish teacher at SMW from the fall of 2010 through at least the spring of 2016.[30]  Since the fall of 2014,[31] on at least three occasions, Carter told Loe that due to the high number of black, Hispanic and other minority students, SMW needed more black and minority teachers.  At the time, Carter was the only minority teacher at SMW.  Carter told Loe that parents of black, Hispanic and other minority students had expressed to her that SMW needed more minority teachers.  Carter also told this to Connie Espinosa-Springfield, associate principal at SMW.[32]

On April 21, 2015, counsel for plaintiff sent Hinson a letter requesting that the District reverse its decision to reassign plaintiff and allow her to remain in her current teaching position at SME.  Plaintiff Ex. 41.  The letter stated that plaintiff was a highly qualified and accomplished African American teacher who was reassigned for no understandable reason.  Id.

On May 1, 2015, counsel for the District responded, inter alia, as follows:

The assignment of teachers to positions where students most need them is within the discretion of the school district.  Transferring [plaintiff] to [SMW] was deemed necessary and in the best interests of the [District] and its students.  The District denies that any other reasons exist for her transfer.  To the extent that your letter contains innuendo that race played a part in this transfer – the District expressly denies such assertions or innuendo.

---

[29]    The record does not disclose when the District posted the position.

[30]    The record does not reflect whether Carter still works at SMW.

[31]    Loe became principal of SMW in the fall of 2014

[32]    In May of 2015, Espinosa-Springfield told Carter that another black teacher was coming to West.  See Plaintiff Ex. 40, Carter Depo. at 79:17 to 80:25.  Based on context, it appears that Espinosa-Springfield was referring to plaintiff.

Importantly, here, the District has not taken any adverse employment action as to [plaintiff]. Her transfer will not decrease her pay or benefits and will not adversely affect any other factor of her employment to which she has a legal right.

Plaintiff Ex. 42.

On August 3, 2015, before she taught or performed any duties at SMW, plaintiff resigned from employment with the District. Since then, plaintiff has not applied for any teaching position or other job.

Although plaintiff was aware of District anti-discrimination policies, she did not file a complaint or otherwise make a complaint of race discrimination. Plaintiff believed that since the District had predetermined that race was not a factor in her reassignment, it would be futile for her to file a formal complaint through District procedures for discrimination claims.[33]

In its disclosures under Rule 26(a)(1)(A)(i), Fed. R. Civ. P., the District identified McKinney and Lyon as individuals likely to have discoverable information that it may use to support its claims or defenses. In response to interrogatories, the District identified McKinney and Lyon as individuals who performed any role regarding the reassignment of plaintiff from SME to SMW. The District did not identify the District Board of Education as having any role or function with respect to the reassignment.

---

[33] Plaintiff's reassignment did not violate the terms of her employment contract or the District collective bargaining agreement.