# N THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RUBYE L. DAVIS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNIFIED SCHOOL DISTRICT NO. 512 ) <br> K/A SHAWNEE MISSION SCHOOL DISTRICT, ) <br> ) <br> Defendant. ) <br> _____) | CIVIL ACTION <br><br> No. 15-9160-KHV |
| RUBYE L. DAVIS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHN MCKINNEY, et al., ) <br> ) <br> Defendants. ) <br> _____) | CIVIL ACTION <br><br> No. 18-2206-KHV |

## MEMORANDUM AND ORDER

Rubye L. Davis brings suit against Unified School District No. 512, known as Shawnee Mission School District (the "District"), John McKinney and Ginny Lyon. Under 42 U.S.C. § 1983, plaintiff asserts that based on race, defendants reassigned her teaching position from Shawnee Mission East High School ("SME") to Shawnee Mission West High School ("SMW") in violation of 42 U.S.C. § 1981. The case is set for jury trial beginning September 4, 2018. This matter comes before the Court on Defendants' Motion For Judgment On The Pleadings Or, In The Alternative, Summary Judgment[1] (Doc. #190) filed July 13, 2018 and Shawnee Mission School District's Motion

---

[1] McKinney and Lyon seek judgment on the pleadings, but their arguments rely on matters outside the pleadings. See, e.g., Defendants' Memorandum (Doc. #190-1) at 7-12,
(continued...)

For Summary Judgment (Doc. #134) filed October 31, 2017. For reasons stated below, the Court sustains both motions.

**I.    Background Information**

Plaintiff originally asserted claims against only the District. See Complaint (Doc. #1) filed July 8, 2015 in Case No. 15-9160-KHV.[2] On April 5, 2018, regarding the District's motion for summary judgment, the Court found that plaintiff had not demonstrated a genuine issue of material fact whether under Section 1983, the District is liable for her claims. See Memorandum And Order (Doc. #153) at 2-6. More specifically, the Court noted that plaintiff asserted that McKinney and/or Lyon had decided to reassign her to SMW, but she did not show that either of them acted as a final policy maker or that the District was otherwise liable for their decision. See id. The Court found that any complaint about discriminatory conduct by McKinney and/or Lyon belonged in a suit against them personally. See id. The Court noted that Magistrate Judge K. Gary Sebelius had entered an order which allowed plaintiff to amend the complaint to include claims against McKinney and Lyon but thereafter, for reasons not reflected in the record, plaintiff stipulated to dismiss the individual claims without prejudice. See id. at 6-7. The Court directed Magistrate Judge James P. O'Hara to revisit the stipulation and determine whether the Court should recall the stipulation and reinstate

---

[1](...continued)
Statement Of Material Facts ¶¶ 6-15, 17-23, 25. Accordingly, the Court considers their alternative motion for summary judgment. See Rule 12(c), Fed. R. Civ. P. (if matters outside pleadings are presented and not excluded, court must treat motion for judgment on pleadings as one for summary judgment).

[2]    Plaintiff also sued Jim Hinson, superintendent of the District, in his individual and official capacities. See Complaint (Doc. #1) at 2, ¶ 4. On March 15, 2017, for reasons not apparent in the record, plaintiff agreed to dismiss with prejudice all claims against Hinson. See Stipulation Of Dismissal (Doc. #80).

plaintiff's claims against McKinney and Lyon individually. See id. at 7-8.

On April 20, 2018, Judge O'Hara recommended that the Court enforce the parties' stipulation and not allow plaintiff leave to amend the final pretrial order to include individual claims against McKinney and Lyon. See Report And Recommendation (Doc. #160) at 2. Judge O'Hara noted that it appeared that nothing precluded plaintiff from filing the individual claims in a separate lawsuit. See id. at 10-11. He recommended that if by April 26, 2018, plaintiff filed a new action asserting individual claims against McKinney and Lyon, the Court immediately consolidate the new action with the case against the District to promote efficient use of Court and party resources. See id. at 12-13.

On April 26, 2018, plaintiff filed a separate suit asserting individual claims against McKinney and Lyon. See Complaint (Doc. #1) in Case No. 18-2206-KHV. On May 2, 2018, the Court adopted the magistrate judge report and recommendation and ordered that the two cases be consolidated, with all future filings to be made in the lead case bearing a consolidated case caption. See Memorandum And Order (Doc. #163) at 5. The Court ordered that all discovery conducted in the lead case be available to the parties in the second case and not be duplicated. See id.

## II. Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires

more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence. Nahno-Lopez, 625 F.3d at 1283.

The Court views the record in the light most favorable to the nonmoving party. See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative. See Liberty Lobby, 477 U.S. at 250-51. In response to a motion for summary judgment, a party cannot rely on ignorance of facts, speculation or suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988); Olympic Club v. Those Interested Underwriters at Lloyd's London, 991 F.2d 497, 503 (9th Cir. 1993). The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251-52.

### III.    Motion For Summary Judgment by McKinney And Lyon

####    A.    Facts

In support of their motion for summary judgment, McKinney and Lyon present an abbreviated statement of material facts. See Defendants' Memorandum In Support Of Their Motion For Summary Judgment On The Pleadings Or, In The Alternative, Summary Judgment (Doc. #190-1) filed July 13, 2018 at 1-4. To provide necessary context, the Court incorporates the factual record regarding the District's motion for summary judgment. See Appendix 1 to Memorandum And Order (Doc. #153) at 12-21. In addition, the following facts are uncontroverted, deemed admitted or construed in the light most favorable to plaintiff.[3]

SMW has a reputation of having more minority students than SME. Memorandum And Order (Doc. #153) at 13. For the 2015-16 school year, SME enrollment was 87 per cent white, and 13 per cent black, Hispanic and other minority students. Id. For the same school year, SMW was 56 per cent white and 44 per cent black, Hispanic and other minority students. Id. Students refer to SMW as a "ghetto" school. Id. This is primarily based on lower-income apartment housing that is close to the school, students coming in from neighboring cities, single-parent households, and a higher ratio of low socioeconomic students and families. Id. SMW students have a reputation of being more disruptive and having more behavioral issues than students at SME. Id.

Until the spring of 2015, the District assigned plaintiff to teach Biology I and Human Anatomy/Physiology at SME.[4] Plaintiff was the only Human Anatomy/Physiology teacher at SME.

---

[3]    The Court includes only those facts which are material to defendants' motion and disregards any facts which are not supported by record citations.

[4]    Biology and Anatomy/Physiology are in the life science departments at SME and
(continued...)

As part of the Human Anatomy/Physiology class, plaintiff instructed students in the dissection and examination of organs and internal parts of animal cadavers. Students regarded her Anatomy/Physiology class as a preparatory class for pursuing college education and careers in human health sciences. In addition, plaintiff generally taught two to three biology classes each year. Plaintiff's schedule fluctuated such that in one year she taught more anatomy/physiology classes and in another year she taught more biology classes.

In March of 2015, McKinney, principal of SME, and Lyon, director of certified professional staff for the District, reassigned plaintiff from SME to SMW for the 2015-16 school year. Memorandum And Order (Doc. #153) at 16-17, 19. Upon reassignment to SMW, plaintiff was assigned to teach Basic Biology I and Introductory Freshman Biology – not the academically advanced and college preparatory course of Human Anatomy/Physiology that she had taught at SME.[5] Memorandum And Order (Doc. #153) at 19. As a result of the reassignment, plaintiff's credentials and stature would be diminished. Id. Also, plaintiff could no longer be involved with

---

[4](...continued)
SMW. From an academic standpoint, Anatomy/Physiology is immensely more complex than Biology I. Affidavit of Rubye L. Davis ¶ 3, Exhibit 1 to Plaintiff's Response To Defendants Ginny Lyon And John McKinney's Motion For Summary Judgment Or In The Alternative Judgment On The Pleadings and Suggestions In Support (Doc. #193) filed July 26, 2018. Anatomy/Physiology consists of college material. Biology I is a prerequisite for Anatomy/Physiology. Id. To effectively teach Human Anatomy/Physiology, in addition to knowing anatomy and physiology, a teacher must know chemistry, biochemistry, microbiology and organic chemistry.

[5] Defendants assert that they did not know what courses plaintiff would be assigned to teach at SMW. Defendants' Memorandum In Support Of Their Motion For Summary Judgment On The Pleadings Or, In The Alternative, Summary Judgment (Doc. #190-1) filed July 13, 2018 at 4, ¶ 24. Plaintiff points out that the reassignment form which Lyon signed on March 23, 2015 states that plaintiff would teach biology at SMW. See Exhibit 2 to Plaintiff's Response (Doc. #193).

the Brain Bee program which she sponsored at SME.[6] Id. In plaintiff's view, the reassignment was tantamount to reassigning a calculus teacher to teach basic math. Id.

On August 3, 2015, prior to performing any duties at SMW, plaintiff voluntarily resigned. Had plaintiff not resigned, she would have received the same salary and benefits that she did at SME.

Plaintiff did not want to transfer to SMW because she wanted to continue to teach Anatomy/Physiology as she had for the past eight years at SME. Davis Affidavit ¶ 4. In addition, due to documented disciplinary problems with students at SMW, plaintiff had a serious concern regarding whether she could teach effectively there. Id.

**B. Analysis**

Under 42 U.S.C. § 1983,[7] plaintiff asserts that on account of race, defendants reassigned her to SMW in violation of 42 U.S.C. § 1981.[8] Amended Pretrial Order (Doc. #189) filed July 5, 2018

---

[6] At SME, plaintiff was a sponsor for "Brain Bee," i.e. a regional, state and national contest where students compete in answering questions about the brain and human nervous system. Brain Bee is also a forum where students can network with science and health care professionals to secure internships and employment in the health science field in high school and college. Memorandum And Order (Doc. #153) at 14.

[7] Section 1983 states as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.] ***

42 U.S.C. § 1983.

[8] Section 1981(a) states as follows:

(continued...)

at 13-14. Defendants seek summary judgment on grounds that (1) the reassignment did not constitute adverse employment action, so plaintiff cannot establish a prima facie case of race discrimination; (2) defendants are entitled to qualified immunity; and (3) the applicable statute of limitations bars plaintiff's claims. See Defendants' Memorandum (Doc. #190-1) at 5-13.

### 1. Adverse Employment Action

Defendants assert that plaintiff cannot establish a prima facie case of race discrimination. The burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to plaintiff's claims. See English v. Colo. Dep't of Corr., 248 F.3d 1002, 1007 (10th Cir. 2001). Under this framework, plaintiff bears the initial burden of establishing a prima facie case, i.e. that (1) she belongs to a protected class; (2) she suffered adverse employment action; and (3) the adverse employment action occurred under circumstances which give rise to an inference of discrimination. See McDonnell Douglas, 411 U.S. at 802; Hysten v. Burlington N. & Santa Fe Ry. Co., 296 F.3d 1177, 1181 (10th Cir. 2002). The burden then shifts to defendants to provide a legitimate, nondiscriminatory reason for the action. McDonnell Douglas, 411 U.S. at 802. If defendants successfully do so, the burden shifts back to plaintiff to show that defendants' stated reason is a pretext for discriminatory intent. Id. at 804.

Defendants assert that plaintiff cannot establish the second element of a prima facie case,

---

[8](...continued)
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

i.e. that her reassignment to SMW constituted adverse employment action. See Defendants' Memorandum (Doc. #190-1) at 7-8. Whether a particular reassignment is materially adverse depends on the circumstances of the particular case, judged from the perspective of a reasonable person in plaintiff's position. Daniels v. UPS, Inc., 701 F.3d 620, 635 (10th Cir. 2012) (quoting Burlington, 548 U.S. at 71). For purposes of a discrimination claim, adverse employment action requires "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Daniels, 701 F.3d at 635 (emphasis omitted) (quoting Piercy v. Maketa, 480 F.3d 1192, 1203 (10th Cir. 2007)). Not every perceived indignity rises to the level of adverse employment action. EEOC v. C.R. England, Inc., 644 F.3d 1028, 1041 (10th Cir. 2011) (quoting Haynes v. Level 3 Commc'n, LLC, 456 F.3d 1215, 1222 (10th Cir. 2006)). A "mere inconvenience" or alteration of job responsibilities does not qualify as adverse action. Piercy, 480 F.3d at 1203 (no adverse action regarding shift-bidding policies where all shifts had similar duties and responsibilities).

Regarding the District's motion for summary judgment, the Court rejected a similar argument. Specifically, the Court found that plaintiff presented evidence sufficient to create a genuine fact issue whether the reassignment constituted adverse employment action. See Memorandum And Order (Doc. #153) at 8-10 n.11. The Court noted that plaintiff presented evidence that SMW students are more disruptive and have more behavior issues than SME students and that defendants reassigned her to teach Introductory Freshman Biology, which is less academically advanced and less prestigious than Human Anatomy/Physiology. See id. at 9 n.11. The Court found that construed in the light most favorable to plaintiff, the record presented a genuine fact issue whether the reassignment constituted adverse employment action. See id. at 9-10

n.11 (citing Stinnett v. Safeway, Inc., 337 F.3d 1213, 1217 (10th Cir. 2003) (fact issue whether job reassignment requiring reduced responsibility and lesser degree of skill constituted adverse action); Drape v. UPS, Inc., No. 12-2172-KHV, 2013 WL 6804214, at *10 (D. Kan. Dec. 23, 2013) (fact issue whether transfer in job assignment constituted adverse action); Walker v. Bd. of Cty. Comm'rs of Sedgwick Cty., No. 09-1316-MLB, 2012 WL 1190820, at *13 (D. Kan. April 10, 2012) (fact issue whether therapist's building transfer constituted adverse action); Ratts v. Bd. of Cty. Comm'rs, 141 F. Supp.2d 1289, 1308 (D. Kan. 2001) (transfer of city employee radically altered duties even though salary remained same); cf. Wells v. Colo. Dep't of Transp., 325 F.3d 1205, 1214 (10th Cir. 2003) (no adverse action where work on new project was similar to old work and sometimes more sophisticated); Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532 (10th Cir. 1998) (teacher reassignment from fourth grade to second grade at another school purely lateral where commute increased but salary and benefits remained same; no special circumstances showed anything beyond mere inconvenience or alteration of job responsibilities)). The Court applies the same analysis here. Defendants are not entitled to summary judgment on this ground.

### 2. Qualified Immunity

Defendants assert that they are entitled to qualified immunity because at the time of the alleged violation, the law did not clearly establish that reassigning plaintiff to teach at SMW constituted adverse employment action. See Defendants' Memorandum (Doc. #190-1) at 9-11. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). It balances two important interests – "the need to hold public officials accountable when they exercise power

irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). When defendants assert qualified immunity on summary judgment, the burden shifts to plaintiff to show that (1) defendants violated a federal statutory or constitutional right and (2) the statutory or constitutional right was clearly established.[9] Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009). The Court asks whether, taken in the light most favorable to plaintiff, the facts demonstrate that defendants violated a statutory or constitutional right and whether the right was clearly established. Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir. 2002) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). To be clearly established, a right must be sufficiently clear such that every reasonable official would have understood that what he or she is doing violates that right. See Mullenix v. Luna, — U.S. —, 136 S. Ct. 305, 308 (2015) (per curiam). Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. Mullenix, 136 S. Ct. at 308.

As discussed, the record presents a genuine fact issue whether reassigning plaintiff to teach at SMW constituted adverse employment action. See Memorandum And Order (Doc. #153) at 8-12 n.11. Construed in the light most favorable to plaintiff, the evidence suggests that as a result of reassignment, plaintiff's pay and benefits remained the same but she would teach Introductory Freshman Biology – which is less academically advanced and less prestigious than Human Anatomy/Physiology – to students with more disruptive behavioral issues. To defeat the qualified immunity defense, plaintiff must show that on the facts of this case, the law clearly established that

---

[9] The Court has discretion to address the two prongs in any order. Becker v. Bateman, 709 F.3d 1019, 1022 (10th Cir. 2013).

the reassigning her to teach at SMW constituted adverse employment action. See, e.g., Bailey v. Indep. Sch. Dist. No. 69 of Canadian Cty. Okla., — F.3d —, 2018 WL 3543064, at *5 (10th Cir. July 24, 2018).

Plaintiff asserts that the law clearly established that Section 1981 prohibits employment discrimination based on race. See Plaintiff's Response (Doc. #193) at 3-4. On the facts of this case, a general prohibition against racial discrimination will not suffice. The Supreme Court has repeatedly instructed that courts must not define clearly established law "at a high level of generality." White v. Pauly, — U.S. —, 137 S. Ct. 548, 552 (2017) (quoting Ashcroft, 563 U.S. at 742). Except in an obvious case, a general test defining the elements of a statutory or constitutional violation will not provide clearly established law. Id. (quotation omitted). Instead, the jurisprudence upon which plaintiff relies must be "particularized to the facts of the case." White, 137 S. Ct. at 552 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Plaintiff asserts that the law clearly established that regardless whether an employee suffers "a tangible employment detriment," Section 1981 prohibits an employer from making job assignments based on race. Plaintiff's Response (Doc. #193) at 4 (citing Plaintiff's Response To Defendant Shawnee Mission School District's Motion For Summary Judgment And Memorandum In Support (Doc. #145) filed December 7, 2017). In other words, plaintiff asserts that any job assignment based on race is per se unlawful, and therefore she need not show that the reassignment constituted adverse employment action. See Plaintiff's Response (Doc. #193) at 4; Plaintiff's Response To Defendant Shawnee Mission School District's Motion For Summary Judgment

(Doc. #145) at 26-27. The cases which plaintiff cites involved direct evidence of discrimination.[10] Here, plaintiff relies on indirect or circumstantial evidence of discrimination, which requires application of the McDonnell Douglas burden-shifting framework. See OneSource Commercial Prop. Servs., Inc. v. City & Cty. of Denver, 535 Fed. Appx. 740, 748 (10th Cir. 2013). Thus, to prevail on her claims, plaintiff must show that the reassignment constituted adverse employment action.

To overcome the qualified immunity defense, plaintiff must show that at the time of the alleged violation, on the facts of this case, the law was clearly established such that every reasonable school official would have understood that reassigning her to SMW constituted adverse employment action. In order for the law to be clearly established, ordinarily there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains. Zia Trust Co. ex rel. Causey v. Montoya, 597 F.3d 1150, 1155 (10th Cir. 2010). A case with identical facts is not required, but existing precedent must have placed the statutory or constitutional issue "beyond debate." Mullenix, — U.S. —, 136 S. Ct. at 308 (quoting Ashcroft, 563 U.S. at 741).

Plaintiff has failed to come forward with any authority which clearly establishes that the reassignment constituted adverse employment action. See Plaintiff's Response (Doc. #193) at 4;

---

[10] Plaintiff cites the following cases: Ferrill v. Parker Grp., Inc., 168 F.3d 468, 472 (11th Cir. 1999) (direct evidence of disparate treatment established prima facie case of discrimination); Knight v. Nassau Cty. Civil Serv. Comm'n, 649 F.2d 157, 162 (2d Cir. 1981) (employer conceded racially-based job assignment); Chaney v. Plainfield Healthcare Ctr., 612 F.3d 908, 913-15 (7th Cir. 2010) (employer's willingness to accede to patient's racial preferences created racially hostile environment); Rodriguez v. Bd. of Educ. of Eastchester Union Free Sch. Dist., 620 F.2d 362, 364 (2d Cir. 1980) (direct evidence that school district transferred plaintiff based on gender). See Plaintiff's Response To Defendant Shawnee Mission School District's Motion For Summary Judgment (Doc. #145) at 26-27.

Plaintiff's Response To Defendant Shawnee Mission School District's Motion For Summary Judgment (Doc. #145) at 26-27. Accordingly, defendants are entitled to qualified immunity on plaintiff's claims. See, e.g., Bailey, 2018 WL 3543064, at *6. As discussed, construed in the light most favorable to plaintiff, the record suggests that as a result of the reassignment to SMW, plaintiff's pay and benefits remained the same but she would teach Introductory Freshman Biology – which is less academically advanced and less prestigious than Human Anatomy/Physiology – to students with more disruptive behavioral issues. Whether a particular reassignment is materially adverse depends on the circumstances of the particular case, judged from the perspective of a reasonable person in plaintiff's position, considering all the circumstances. Daniels, 701 F.3d at 635.

The case law in this area is highly fact-specific and reveals a hazy backdrop against which defendants acted. In particular, cases in the Tenth Circuit have reached mixed results regarding whether job reassignments in similar circumstances constituted adverse employment action. See Chung v. El Paso Sch. Dist. No. 11, 659 Fed. App'x 953, 955-56 (10th Cir. 2016) (no adverse action for teaching reassignment from language arts to drama where no change in pay or benefits; no evidence supported allegations that reassignment damaged reputation as literacy expert and involved poor work conditions); Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ. 595 F.3d 1126, 1133 (10th Cir. 2010) (teaching reassignment which directly led to reduction in compensation constituted adverse action); McCrary v. Aurora Pub. Sch., 57 Fed. App'x 362, 369 (10th Cir. 2003) (no adverse action for proposed teaching transfer from third grade to classroom support; no evidence that job responsibilities significantly differed); Sanchez, 164 F.3d at 532 (no adverse action for teaching reassignment from fourth grade to second grade at another school where commute increased but

salary and benefits remained same; no special circumstances showed anything beyond mere inconvenience or alteration of job responsibilities); see also Daniels, 701 F.3d at 635 (no adverse action for job reassignment from day shift to night shift; no evidence showed duties differed significantly); Jones v. Okla. City Pub. Sch., 617 F.3d 1273, 1279-80 (10th Cir. 2010) (reassignment of school district executive director to elementary school principal constituted adverse action where salary remained same for one year then decreased); Ratts, 141 F. Supp.2d at 1308-09 (adverse action prong satisfied even though salary remained same where job transfer from administrative work to shelving books in library resulted in radically altered job duties).[11]

On this record, plaintiff has not shown that settled law clearly established that reassigning her to teach freshman biology at SMW constituted adverse employment action. Because the law did not establish "beyond debate" that defendants' actions were unlawful, McKinney and Lyon are

---

[11] Cases in other circuits are equally mixed. See, e.g., Campbell v. Hawaii Dep't of Ed., 892 F.3d 1005, 1015 (9th Cir. 2018) (no evidence that assignment to teach remedial math altered term or condition of employment); Fiorentini v. William Penn Sch. Dist., 665 Fed. App'x 229, 234-35 (3rd Cir. 2016) (plaintiff's subjective belief that teaching reassignment was demotion insufficient to create fact issue regarding adverse action); Oller v. Roussel, 609 Fed. App'x 770, 774 (5th Cir. 2015) (undesirable teaching assignment not adverse action); Lore v. City of Syracuse, 670 F.3d 127, 170 (2d Cir. 2012) (transfer from elite position to less prestigious position with little opportunity for professional growth sufficient to infer adverse action); Francis v. Elmsford Sch. Dist., 263 Fed. App'x 175, (2d Cir. 2008) (assignment to teach in hallway with diminished teaching responsibilities constituted adverse action); Freeman v. Potter, 200 Fed. App'x 439, 443 n.2 (6th Cir. 2006) (given fact-specific nature of inquiry, many cases have concluded that lateral transfer did not constitute adverse employment action and many have found such action adverse); Lee v. Ariz. Bd. of Regents, 25 Fed. App'x 530, 533 (9th Cir. 2001) (transfer to different teaching schedule may constitute adverse employment action for retaliation claim); Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 641 (2d Cir. 2000) (no adverse action where no evidence that change in teaching responsibilities constituted setback to career); Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 412 (3rd Cir. 1999) (fact issue whether transfers resulting in lost opportunity to teach physics and being in "difficult school" constituted adverse action); Johnson v. Chattanooga Bd. of Educ., No. 90-5593, 1991 WL 24709, at *2 (6th Cir. Feb. 27, 1991) (plaintiff did not show transfer from teaching second grade to teaching third grade was adverse action).

entitled to qualified immunity on plaintiff's claims.[12]

**IV.     Motion For Summary Judgment By Shawnee Mission School District**

As noted, regarding the District's motion for summary judgment, the Court previously found that plaintiff had not demonstrated a genuine issue of material fact whether the District was liable for her claims. See Memorandum And Order (Doc. #153) at 2-6. On May 2, 2018, the Court ordered the parties to show cause in writing why it should not sustain the District's motion for summary judgment and enter judgment in favor of the District. See Memorandum And Order And Order To Show Cause (Doc. #163) at 6. The Court stated that it was not inviting new argument on the analysis in its Memorandum And Order (Doc. #153), and the parties should address only whether there was any reason not to enter judgment under Rule 54, Fed. R. Civ. P. See Memorandum And Order And Order To Show Cause (Doc. #163) at 6.

In response to the show cause order, the District asserts that the Court should sustain the summary judgment motion and enter judgment in its favor. See Shawnee Mission School District's Reply To Plaintiff's Response To The Court's Show Cause Order (Doc. #171) filed May 8, 2018 at 1-2. Plaintiff, on the other hand, attempts to challenge the Court's analysis that she has not shown a genuine issue of material fact regarding whether defense counsel's letter of May 1, 2015 demonstrates that the Board ratified the reassignment decision. See Plaintiff's Response To The Court's Show Cause Order (#163) (Doc. #170) filed May 8, 2018 at 1-2; Memorandum And Order (Doc. #153) at 4-5 n.6. Plaintiff asserts that based on attorney ethical rules and the fact that the District has not denied that counsel was authorized to speak on its behalf, the Court may infer that

---

[12]     In light of this conclusion, the Court does not address defendants' argument that the statute of limitations bars plaintiff's claims.

-16-

counsel was authorized to respond on the District's behalf. See Plaintiff's Response To The Court's Show Cause Order (#163) (Doc. #170) at 1-2. Plaintiff's argument misses the mark. The Court found that standing alone, counsel's letter did not establish a genuine fact issue regarding whether the Board had ratified the reassignment decision. See Memorandum And Order (Doc. #153) at 4-5 n.6. It did not address whether counsel was authorized to speak on behalf of the District.[13] Moreover, as noted, the Court did not invite the parties to present new argument regarding its analysis in the Memorandum And Order (Doc. #153). See Memorandum And Order And Order To Show Cause (Doc. #163) at 6. On this record, the Court finds that the District's motion for summary judgment should be sustained.

**IT IS THEREFORE ORDERED** that Defendants' Motion For Judgment On The Pleadings Or, In The Alternative, Summary Judgment (Doc. #190) filed July 13, 2018 is **SUSTAINED**. John McKinney and Ginny Lyon, are entitled to qualified immunity on plaintiff's claims.

**IT IS FURTHER ORDERED** that for reasons stated in the Memorandum And Order (Doc. #153) filed April 5, 2018, Shawnee Mission School District's Motion For Summary Judgment (Doc. #134) filed October 31, 2017 is **SUSTAINED**. The Unified School District No. 512, known as Shawnee Mission School District, is entitled to judgment as a matter of law on plaintiff's claims.

---

[13] The Court notes that plaintiff does not assert that the Board authorized counsel to "speak with final policymaking authority." McMillian v. Monroe Cty., Ala., 520 U.S. 781, 784-85 (1997); see also Robinson v. City of Arkansas City, Kan., 896 F. Supp.2d 1020, 1043 (D. Kan. 2012) (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989) (trial judge must identify officials who speak with final policymaking authority concerning action alleged to cause particular violation at issue). Standing alone, counsel's statements regarding the District's position regarding plaintiff's claims do not constitute Board ratification of the actions of McKinney and Lyon. See, e.g., Taylor v. City of Bixby, Okla., No. 12-CV-0066-CVE-FHM, 2012 WL 6115051, at *15 (N.D. Okla. Dec. 12, 2012) (for purposes of Section 1983 municipal liability, attorney statements made after close of discovery regarding city's defenses or claims does not constitute ratification of employee's action).

**IT IS FURTHER ORDERED** that the Clerk enter judgment in favor of defendants, Unified School District No. 512, known as Shawnee Mission School District, John McKinney and Ginny Lyon, on all claims.

Dated this 15th day of August, 2018 at Kansas City, Kansas.

s/ Kathryn H. Vratil<br>
KATHRYN H. VRATIL<br>
United States District Judge